# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

Landry, et al                                    Civil Action No. 6:16-cv-00192

versus                                              Judge Rebecca F. Doherty

NuVasive Inc., et al                   Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Before the undersigned, upon referral from the district judge, is a Motion To Dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendant, NuVasive, Inc. ("NuVasive"), [Rec. Doc. 48], Plaintiffs, Thomas D. Landry ("Landry") and Cheryl Landry's Memorandum In Opposition [Rec. Doc. 52], and NuVasive's Reply thereto [Rec. Doc. 55]. For the reasons that follow, the undersigned will recommend that the Motion be granted in part and denied in part.

### I. Background

This is a Louisiana Products Liability Act case ("LPLA") concerning a spinal fixation system manufactured by NuVasive ("the device"). On September 21, 2016, the Court conducted oral argument on NuVasive's Motion to Dismiss Plaintiffs' claims in its Amending Complaint. *R. 44*. The undersigned recommended that NuVasive's motion be granted in part, dismissing Plaintiffs' claims that NuVasive

failed to properly test the device and Plaintiffs' claims of "other acts and omissions"which they claimed would be proven at trial.   The undersigned recommended that NuVasive's motion be denied as to Plaintiffs' claims related to the "construction and composition" and the "design" of the device, allowing Plaintiffs to amend the Complaint as to those claims. *R,45.* The Court adopted the Report and Recommendation. *R. 46.* On November 18, 2016, Plaintiffs' filed their Second Amending Complaint  (referred to as "the Complaint"),  *R. 47*, and NuVasive filed the motion at bar.

In the Complaint, Plaintiffs allege that the device implanted into Landry by his surgeon contained a characteristic which rendered it unreasonably dangerous in construction and composition, and alternatively, in design. *R. 47*, *Second Amending Complaint.* Plaintiffs further allege that following his surgery, Landry began suffering infections and temporary paralysis and he noticed "noises" coming from the device. After an examination by his surgeon during which time Landry demonstrated the "noises" and complained of significant pain, he underwent a second surgery on January 28, 2015, in which the device was removed and replaced. Following the second surgery, the surgeon indicated a postoperative diagnosis of "Hardware Failure." *Id. at ¶ 9.* The surgeon's findings indicated there was "evidence of hardware loosening between the polyaxial head and the rod" and the rod was "loose and

2

moving around." *Id.* The surgeon informed Landry that "the device had not been functioning properly due to the failure of the threads on the screws connecting to the rods." *Id.* Plaintiffs allege "on information and belief, the threads which failed are believed to be the threads on the locking caps which attached to the polyaxial screws, holding the rods in place and preventing the rods from moving excessively. The rods also contain scratch marks which are further indication of excessive movement." *Id.* Plaintiffs' allege that at no time during the period in which the device was in Landry's body did he act or do any action which might be construed as not a reasonably anticipated use of the  device. *Id. at ¶ 14.*

In the motion at bar, NuVasive argues "[w]hile Plaintiffs' Second Amending Complaint may state a claim for a defective construction and composition, it contains no factual allegations that, if accepted as true, prove a claim for a defective design." NuVasive therefore argues that this claim must be dismissed.  For the reasons that follow, the undersigned agrees.

## II. Motion To Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for

relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 . "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

Further, the United States Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," ... a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989). When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir.2007).

### III. Discussion

The LPLA "establishes the exclusive theories of liability for manufacturers for

4

damage caused by their products." La.Rev.Stat. § 9:2800.52. Accordingly, "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [it]." *Id.* Under the LPLA, "a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Stahl v. Novartis Pharm. Corp*., 283 F.3d 254, 260–61 (5th Cir.2002) (citing La. Rev. Stat. § 9:2800.54). The plaintiff bears the burden of proving all elements. La.Rev.Stat. § 9:2800.54(D). As to the third element, a product can be "unreasonably dangerous" (I) in construction or composition; (ii) in design; (iii) for failure to provide an adequate warning; and (iv) for failure to conform to an express warranty. La.Rev.Stat. § 9:2800.54(B).

Here, Plaintiff contends NuVasive is "unreasonabley dangerous" for its defective construction or composition and for it defective design. In its motion, NuVasive argues that Plaintiffs' allegations as to defective design contain insufficient factual allegations to state a claim upon which relief can be granted. *R.48.* In particular, NuVasive argues that these allegations lack details about how NuVasive improperly designed its products and do not sufficiently allege an existing and non-burdensome alternative design.

To assert a design defect claim under the LPLA, a plaintiff must establish that, at the time the product left the manufacturer's control, (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) [t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting the alternative design and the adverse effect, if any, of such alternative design on the utility of the product...." La. R.S. § 9:2800.56. *See Roman v. W. Mfg. Inc*., 691 F.3d 686, 700–01 (5th Cir.2012). Thus, the statute requires Plaintiffs to prove (i) that an alternative design existed at the time NuVasive manufactured the device, and (ii) "that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and loss of product utility)." *Id.*

Upon reviewing Plaintiffs' Complaint, the Court finds that Plaintiffs' allegations as to defective design provide:

> In additional [sic] to and in the alternative, at all times relevant hereto, there existed an alternative design to the system that was capable of preventing the claimant's damage. The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden o [sic] the manufacturer of adopting such design and the adverse effect, if any, of such alternative design on the utility of the product.

· · ·

> Failing to prevent damages t [sic] the Plaintiff by using an existing alternative design that was capable of preventing the claimant's damages and that the claimant's damages and the gravity of the [sic] that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

*Id. at ¶¶ 15, 16.*

.

Construing the above factual allegations as true, Plaintiffs' defective design claim is not entitled to relief under the LPLA. First, Plaintiffs fail to allege any affirmative evidence of the existence of an alternative design for the NuVasive product when it left NuVasive's control.  Also, Plaintiffs' allegation that the risk of someone being injured by the design of the device outweighed the burden of adopting such an alternative design is merely a summary assertion without any factual allegations.

The Court is mindful that much of the evidence in medically-related products liability cases, such as this one, may be in the defendant's possession and, without the benefit of discovery, stating more specific allegations may be nearly impossible at this stage. *Lahaye v. AstraZeneca Pharmaceuticals LP*, 2015 WL 1935947, at *5 (M.D.La.,2015). Nevertheless, Plaintiffs' bare-bone allegations fail to state a claim upon which relief can be granted.

Even considering the factual allegations beyond the categorizations set out in

the Complaint, the Court cannot find that Plaintiffs have pled a plausible claim for defective design. *See Flagg v. Stryker Corp.*, 647 Fed.Appx. 314, 318 (5th Cir. 2016) (citing *Peavy v. WFAA–TV, Inc.*, 221 F.3d 158, 167 (5th Cir.2000) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.")).  Plaintiffs claim that the device failed because of "the threads on the screws connecting to the rods." *R. 47, ¶ 9.* They further claim that the treads on the polyaxial screws which failed were those on the locking caps which held the rods in place and prevented them from moving excessively. *Id.* While these allegations support a conclusion that the device was constructed in a way that deviated from specifications or performance standards, it fails to suggest that an alternative design existed which would have reduced the risks of the original product.

"[T]he question at the motion to dismiss stage is not whether [the plaintiff] has proven the elements to succeed on a products liability claim, or even whether he has made detailed factual allegations. The question is whether [the plaintiff] has plausibly alleged enough information that, *with discovery*, he could prove the Manufacturing Defendants are liable under the LPLA." *Flagg*, 647 Fed.Appx. at 319 (citing *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir.2008)) (emphasis in original). Thus, Plaintiffs' allegations must provide sufficient information to "raise a reasonable

expectation that discovery will reveal evidence" to support the defendant's liability. *Id.* at *3. The undersigned concludes that Plaintiffs have failed to do so.

## IV. Conclusion

Based on the foregoing, the undersigned recommends that NuVasive, Inc.'s Motion To Dismiss under Fed. R. Civ. P. 12(b)(6) [Rec. Doc. 48] be granted and Plaintiffs' claim that the NuVasive, Inc. device is unreasonably dangerous for defective design be dismissed with prejudice for failure to state a claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 20th day of January, 2017.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**