# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Landry et al | Civil Action No. 6: 16-cv-00192 |
| versus | Magistrate Judge Carol B. Whitehurst |
| Nuvasive Inc et al | By Consent of the Parties |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment filed by Defendant, NuVasive, Inc. ("NuVasive") [Rec. Doc. 69], Plaintiffs, Thomas D. Landry and Cheryl Landry's (collectively "Plaintiffs"), Memorandum In Opposition [Rec. Doc. 75] and NuVasive's Reply thereto [Rec. Doc. 83]. For the reasons that follow the Court will GRANT IN PART NuVasive's Motion for Summary Judgment as to the prescription issue and dismiss Plaintiffs' action with prejudice.

## I. Factual Background

In a May 27, 2014 surgery, Dr. Jason Cormier utilized a "spinal fixation system" (the "System") to fuse Thomas D.Landry's ("Landry") L2-S1 vertebra. *R. 47 at ¶5*. In November of 2014, Landry began hearing noises coming from his back that he described as "sounding like a rocking chair; squeak, squeak, squeak, squeak. And it wasn't just me that could hear it, anybody around me could hear it." *R. 69-3, Landry's Depo., pp. 3-4*. Additionally, his "back began to hurt more and more" during this time. *R. 69-4, Response to Interrog No. 2*.

On December 10, 2014, Landry consulted his primary care physician, Dr.

Paul Stringfellow. *Id.* Dr. Stringfellow heard the squeaking sound Landry's back made when he was walking, sitting down, and rocking back and forth. *R. 69-3, pp. 4-5.* Dr. Stringfellow suspected that the squeaking sound –which he was able to hear without a stethoscope–came from the hardware in Landry's back. *R. 69-5, Depo. of Stringfellow, pp. 2-3.* Dr. Stringfellow called Dr. Cormier's office in Plaintiff's presence to describe the squeaking sounds emanating from Landry's back and recommend that Dr. Cormier listen to Plaintiff's back because Dr. Stringfellow suspected the sound might involve his prior back surgery. *Id. at p. 4;R. 69-3, p. 5.* Following Dr. Stringfellow's recommendation, Plaintiff was examined on December 24, 2014, by Dr. Cormier's nurse practitioner, Lauren Choate, examined Landry who noted that the pain in his lower back has been increasing daily. Choate scheduled Landry's appointment with Dr. Cormier on January 12, 2015. Plaintiff's deposition testimony about his medical examination stated in part:

> In January 2015, I went to Dr. Cormier's office and his staff was shocked by the sound emanating from my back. Based off of the noise and the increased pain, Dr. Cormier determined surgery was needed. Dr. Cormier suspected hardware failure, and this was the reason for the second surgery.

*R. 69-4, Response no. 12.* On January 12, 2015, Plaintiff gave written consent for Dr. Cormier to surgically remove and replace the System. *R. 69-3, p. 8-10.* Dr.

2

Cormier's assessment plan stated, "[w]e plan for reexploration of L2 through S1 followed by *removal* of hardware followed by *replacement* of instrumentation from L2 to S1 to stabilize this." *R. 75-5* (emphasis added). As noted on the consent form, Plaintiff understood that Dr. Cormier recommended this surgery because he suspected there was a problem with the System. *Id. at pp.7, 14*. Later that day, Plaintiff posted on his Facebook account:

> So, I have missed my main goal for the year. I will be having another surgery at the end of this month. This time to replace two rods in my back. My back has been squeaking for a while, as if it were a rocking chair and has been getting worse. One more time under the knife.

*Id. at p. 15*.

On January 28, 2015, Dr. Cormier performed the surgery on Landry and removed the System. *R. 1-1, ¶ IV*. Plaintiffs sued NuVasive and Dr. Cormier on February 10, 2016, alleging in part that there was a manufacturing defect in the NuVasive System and that Dr. Cormier committed medical malpractice. *R. 1-1*.

## II. Procedural Background

Nuvasive filed the instant motion for summary judgment on December 28, 2017 moving the Court to dismiss this action because (1) Plaintiffs' LPLA claim is prescribed and (2) Plaintiffs cannot prove that the System was defective under the LPLA. Nuvasive contends in its motion that Plaintiffs have not disclosed any expert

3

witnesses or other witnesses who are competent to testify in support of their LPLA manufacturing defect claim. Nor have Plaintiffs conducted any discovery in this case. On April 12, 2017, the Court entered a Scheduling Order that required Plaintiffs to disclose expert witnesses and provide their Rule 26 reports by November 16, 2017. *R. 60*. Pursuant to the Scheduling Order the discovery deadline was October 10, 2017 and the dispositive motion deadline was February 22, 2018. *Id.*

Plaintiffs filed a memorandum in opposition to Nuvasive's motion for summary judgment contending that Landry "was not aware of the facts giving rise to suspicion that a tort may have occurred against him until his January 28, 2015 surgery confirmed the screws were loose and the hardware appeared defective." *R. 75*. Plaintiffs cite Landry's December 11, 2014 appointment in which Lauren Choate, Dr. Cormier's nurse practitioner, diagnosed the noises from Landry's back as "crepitus" and referred him to physical therapy. They further contend that at the January 12, 2015 appointment with Dr. Cormier in which Landry consented to surgery to remove and replace the System, Dr. Cormier stated that "imaging did not demonstrate any loosening of the hardware" and that the surgery was to "explore and ensure that the hardware did not fail." *R. 75-6*. Dr. Cormier further stated that because Landry "had significant pain that was also suspicious for hardware failure" the surgery was performed. *Id.*

At the time of filing their opposition to the motion, Plaintiffs filed a motion to continue the trial of this matter, *R. 73*, and a motion to continue the hearing on the instant motion pursuant to Rule 56(d) in order to "conduct additional discovery related to the relevant elements of the manufacturing defect claim." *R. 74*. In these motions Plaintiffs contend that while they "have sufficient information to address the prescriptive issue," they need additional time to "prove essential elements of he LPLA manufacturing defect claim." *R. 74, pp. 1-2*. Plaintiffs represent the need to conduct the following discovery: (1) Interrogatories, requests for production of documents and depositions related to sales representatives; (2) Interrogatories, requests for production of documents and depositions related to prior claims and lawsuits about the hardware at issue; (3) Interrogatories, requests for production of documents and depositions related to product design, design standards and procedures; (4) depositions of Nuvasive corporate representatives regarding product history and performance standards; (5) depositions of Nuvasive product engineers or scientists related to product design, manufacturer's specifications or performance standards; (6) deposition of Dr. Cormier; (7) inspection of the hardware; (8) deposition of expert witness Troy D. Drewry, Medical Device Expert Witness for Product Development and Engineering to discuss issues related to the hardware and hardware malfunction. Counsel for Plaintiffs states he was only retained in May 2017 and was prevented from complying

with the Scheduling Order deadlines established on April 12, 2017 because he "worked on a MDL Vaginal Mesh Case and . . . a wrongful death mediation" in Texas and had a number of personal issues—essentially, that he was too busy with other matters.

The Court conducted a telephone conference with counsel for the parties on February 20, 2018. The Court stated that, based on the instant motion for summary judgment pending since December 28, 2017, before an "unassigned district judge," the Court will consider only the motion's prescription issue as quickly as possible. Because of the Court's own motion and trial docket, however, it must defer ruling on the remainder of the motion. The Court indicated that in the event Plaintiffs' case survived prescription, the Court would then consider the motion to continue the trial and how to equitably resolve Plaintiffs' failure to comply with the Court's Scheduling Order.[1]

### III. Law and Analysis

A. Legal Standard

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that

---

[1] After the Court's order, on **March _, 2018**, the parties elected to consent to trial by this Court. As previously represented to the parties, the Court will first consider the prescription issue and if necessary will address Plaintiff's failure to comply with the Court's order.

the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255. The court may not make credibility findings, weigh the evidence, or resolve factual disputes. *Id.*; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Hearsay evidence as well as uncertified, unsworn documents are not appropriate for consideration in ruling on a summary judgment motion. *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

B. Prescription

The substantive law identifies which facts are material. *Love v. National Medical Enterprises*, 230 F.3d 765, 770 (5th Cir.2000). The law applicable to the

7

plaintiff's claims is the LPLA and the applicable one year prescriptive period in La. Civ.Code art. 3492.

Claims brought under the LPLA are governed by the one year prescriptive period for delictual actions in Article 3492 which provides in pertinent part: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." Although prescription begins to run from the day injury or damage is sustained, damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. *Cameron Parish School Board v. ACandS, Inc.*, 687 So.2d 84, 88 (La.1997); *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir.1995); *Jones v. Honeywell Int. Inc.*, 295 F.Supp.2d 652 (M.D.La.2003). In cases where injury or damage is not immediately apparent, "prescription will begin to run when the damage is sustained. However, contra non valentem will suspend the running of the prescriptive period until the claimant knows or should reasonably know that he has suffered damages." *Brown*, 52 F.3d at 527; *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 204 n. 2 (5th Cir.2001) ("the cause of action accrues when damages are first suffered, but the prescription period does not run until such time as a reasonable plaintiff would become aware of the connection between her injured condition and the defendant's tortious actions") (citing *Brown*, 52 F.3d at 527); *Boyd v. B.B.C. Brown*

*Boveri, Inc.*, 656 So.2d 683, 686 (1995).

In its motion, NuVasive asserts that "at the very latest" prescription began to run on January 12, 2015 when Landry gave written consent for Dr. Cormier to surgically remove and replace the System. Citing Landry's deposition testimony, NuVasive contends that also on that date Dr. Cormier recommended the surgery because he suspected there was a problem with the System. In his deposition Landry confirmed Dr. Cormier's notes from his January 12, 2015 examination explaining Plaintiff's need for the surgery—"I think it is certain – certainly related to [his] instrumentation. We plan for re-exploration of L2 to S1 followed by removal of hardware, followed by replacement of instrumentation from L2 to S1 to stabilize this..." R. 69-3, p. 7.

The *contra non valentem* principle, provides that prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort and the date on which the tortious act actually produces damages." *Bailey v. Khoury*, 891 So. 2d 1268, 1284 (La. 2005)); *Guidry*, 418 F. Supp. 2d at 841-42 (Plaintiff's cause of action under the LPLA accrued and prescription began to run in November 2001, when her alleged injury and damage from gastrointestinal problems first manifested and when she "became aware of the connection between her condition and the defendant's product . . . . Plaintiff's continued symptoms through March 2002 and

subsequent diagnosis of steatohepatitis do not support a competing inference or contrary conclusion."); *McNeely v. Danek Medical, Inc.*, 1999 WL 1117108, at *1 (W.D.La.,1999). As the Fifth Circuit explained, "the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999). In other words, "[i]t is not the rule in Louisiana . . . that the prescriptive period does not begin until conclusive, dispositive proof of a causal connection between the suspected injury and the putative tortfeasor is established." *Carter v. Matrixx Initiatives, Inc.*, 391 F.App'x 343, 345-46 (5th Cir. 2010). Indeed, in cases involving the effects of medical products, "it is the plaintiff/patient's knowledge of the connection between their alleged injuries and damages and the medical product that is key to the accrual of the cause of action." *Peterson v. C.R. Bard, Inc.*, 2015 WL 4459912, at *2 (M.D.La.,2015).

Nuvasive contends that the *McNeely* decision is directly on point. In *McNeely*, the plaintiff's surgeon informed him in May of 1992, and again in August of 1992, that his symptoms could be related to the screw system implanted during a spinal fusion. In March of 1993, plaintiff felt a snap in his lumbar area and subsequent x-rays showed that one of the implants had broken. The plaintiff filed his suit

on December 27, 1993. In finding the LPLA claim prescribed, the court stated:

> It is uncontroverted that Mr. McNeely had the requisite information as early as May 1992, when Dr. Albright informed him that his post-surgical difficulties could be related to the PAS. Mr. McNeely was again informed of the potential problems with the PAS in August 1992. In both instances, Dr. Albright discussed potential problems with the PAS and went so far as to recommend removal of the PAS."

*McNeely*, at * 2. Thus, despite filing his lawsuit within one year of the date the x-ray showed that the implant was broken, the court held that the plaintiff's LPLA claim was prescribed because his physician informed him more than one year before he filed suit that his symptoms could be related to the implant.

Plaintiffs argue that *McNeely* is distinguishable from this action because he was told by his surgeon that the PAS system "could be causing his symptoms" and he recommended surgery to remove the hardware which McNeely declined. The Court agrees that the facts of *McNeely* are similar to Landry's situation. Here, as in *McNeely*, the undisputed facts provide that Landry was aware of squeaking and increasing paid in his back since November, 2014. He consulted with and was examined by his treating physician, Dr. Stringfellow, in early December, 2014. After examining him, Dr. Cormier informed Landry more than one year before Plaintiffs filed suit that he believed the unusual squeaking sounds and increased pain in Landry's back were related to the System and recommended surgery to remove and

replace the System. On January 12, 2015, Landry consented in writing to Dr. Cormier's surgery recommendation to remove and replace the System. Also on that date, Landry posted on his Facebook account that he was having surgery to "replace two rods in my back. My back has been squeaking for a while, as if it were a rocking chair and has been getting worse."

Pursuant to the Fifth Circuit jurisprudence cited in the foregoing, the fact that the January 28, 2015 surgery allegedly confirmed Dr. Cormier's January 12, 2015, belief that there was a problem with the System is of no import. The prescriptive period commenced when Landry had enough notice to call for an inquiry about his claim—when he signed the Consent to remove and replace the System on January 12, 2015—not when the January 28, 2015 surgery confirmed the facts or evidence of his claim. *See Luckett*, 171 F.3d at 300; *Carter*, 391 F.App'x at 345-46.

## IV. Conclusion

Based on the foregoing analysis, the Court will GRANT Motion for Summary Judgment filed by Defendant, NuVasive, Inc. ("NuVasive") [Rec. Doc. 69] and DISMISS WITH PREJUDICE Plaintiffs, Thomas D. Landry and Cheryl Landry's, claims under the Louisiana Products Liability Act as prescribed.

THUS DONE AND SIGNED, March 14, 2018, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE